Oscar **ENGLAND**, Appellant,

v.

**AMERICAN SOUTHERN INSURANCE COMPANY**, a corporation, Appellee.

No. 11083.

United States Court of Appeals
Fourth Circuit.

Argued April 6, 1967.

Decided May 29, 1967.

D. Grove Moler, Mullens, W. Va., for appellant.

Robert M. Richardson, Bluefield, W. Va., for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

■ Breach of the condition calling for notice to the insurer of an insured's accident, American Southern Insurance Company asserts, voided its responsibility to defend and save Josephine Anderson and her driver harmless under an automobile liability policy it had issued to her. The company sued in the District Court for such a declaration. From a decree to this effect against the defendants— the named insured, the driver of the Anderson automobile, who was an additional insured, and a tort claimant against the two insureds—the claimant appeals. We think there was no forfeiture of coverage of the insured and the claimant; as to them the decree should be reversed. As to the driver, we affirm.

Decision issued on cross-motions for summary judgment and a fair and clear statement of the facts is found in the opinion of the trial judge as follows.

"On September 9, 1964, defendant Janet Shufflebarger, the adult married daughter of defendant Josephine Anderson, who at the time resided at her mother's home, drove her mother's automobile, on which plaintiff held liability insurance, on an errand for and at the direction of her mother. In the course of this trip Mrs. Shufflebarger drove into the rear of a stopped pickup truck owned and operated by defendant Oscar England. Physical damage to the vehicles was minimal, the right front fender of the Anderson car having been dented and the rear bumper of the England truck having been indented. At the time, neither party appeared to have sustained physical injuries, however, later that evening Mr. England allegedly 'blacked out' and was hospitalized as a result of the accident.

"Mrs. Shufflebarger, because of concern over her mother's health, did not advise Mrs. Anderson of the mishap upon returning home that evening. When asked about the dented fender a few days later, the daughter explained that she had struck a pole. Mrs. Anderson had the damage repaired at an expense of $51.24. There is no contention that Mrs. Anderson had any knowledge of the actual cause of the dent until January 1966, when so advised by an insurance adjuster.

"To say that Mrs. Shufflebarger has been less than candid concerning this accident is as charitable as the circumstances allow. Within a few days of the occurence, Mrs. Oscar England apparently advised Janet Shufflebarger of the injuries claimed to have been suffered by her husband. Although Mrs. Shufflebarger contends that she only confirmed what Mrs. England was able to discover through an independent investigation, the Englands became aware that John Shufflebarger, Janet's husband, carried automobile insurance through Flat Top Insurance Agency, Bluefield, West Virginia, and advised the agency of the ac-

cident. During this period Mr. Shufflebarger was away from the Anderson residence except on week-ends and he had no knowledge of the accident until October 1965.

"On January 27, 1965, an insurance adjuster representing Mr. Shufflebarger's insurance carrier interviewed Mrs. Shufflebarger and took a signed statement from her regarding the accident. She contends that she did not read the statement before signing it and that it contains a number of inaccuracies. However, she does admit having told the adjuster that at the time of the accident she was driving her husband's automobile.

"Negotiations for settlement of the matter between the Englands and the insurance carrier for the Shufflebargers proved fruitless and a suit was instituted in the Circuit Court of Wyoming County, West Virginia against John and Janet Shufflebarger. Notice of this suit was apparently the first knowledge John Shufflebarger had of the accident. His wife thereafter told him of the actual events and on December 21, 1965, they made a statement to an insurance adjuster wherein Mrs. Shufflebarger disclosed that she was driving her mother's automobile at the time of the accident. Shortly thereafter, the adjuster advised Mrs. Anderson of this and she informed her own insurance carrier, the plaintiff herein, the next day.

"Plaintiff seeks to deny liability on the ground of failure to give timely notice, and the pertinent provisions of the insurance contract relied upon are as follows:

'Persons Insured

'The following are insured under Part I:

'(1) The named insured and any resident of the same household,

'(2) any other person using such automobile, provided the actual use thereof is with the permission of named insured;

'Definitions

'Under Part I:

' "named insured" means the individual named in Item I of the declarations and also his spouse, if a resident of the same household; "insured" means a person or organization described under "persons insured";

'CONDITIONS

'3. Notice: In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. * * *' "

In our judgment insurance of the named insured, Josephine Anderson, remained despite the delinquency of her daughter in fulfilling her obligation to report the accident. Her mother did give the requisite notice "as soon as practicable" and hence she did not lose protection.

 For this conclusion, we start with the policy's provision that: "The insurance afforded under Part I [liability coverage] applies separately to each insured against whom claim is made or suit is brought * * *." This concept is thus carried into Condition (3)'s requirement of notice by the "insured", particularly since the term includes the named insured as well as the additional insured, the driver. A fair inference is that under the separation theme the rights of one are not to be barred by a default of the other. This is strengthened by Condition (6) which declares that "No action shall lie against the company unless, as a condition precedent thereto, the insured [obviously referring to either the named or the additional] shall have fully complied with all the terms of this policy * * *."

Consequently, the standing of the mother to enforce the policy is not necessarily destroyed by the daughter's lack of candor. The determinative question is, then, when did Josephine Anderson under the undisputed facts, including the violation of duty to the insurer by the daughter, first receive actual or imputed knowledge of the accident involving her car.

 Concededly, she did not get actual knowledge, nor was she put on notice to inquire, until the day before she advised the company of the incident. Moreover, we further conclude that constructive knowledge was not chargeable to the mother. When knowledge is to be imputed was declared by Judge Soper for this court in Ohio Farmers Indem. Co. v. Charleston Laundry Co., 183 F.2d 682, 684 (4 Cir. 1950) as follows:

"The general rule of law respecting notice to or by an officer or agent of a corporation is that the rights of the corporation are not affected unless the notice is in regard to a matter coming within the sphere of the agent's duty while attending to the business of the corporation; and this rule is applied in respect to the knowledge imputed to the corporation of an accident in which its agent is involved and to notice by the corporation to an insurance company under the terms of a liability policy. * * *"

Therefore, if notice of an agent is not ascribable to the principal unless it is "in regard to a matter coming within the sphere of the *agent's duty*", then imputation must vary with the breadth of the agency. Here, as the District Judge has found, the relation between mother and daughter was not that of master and servant. The mother did not purport or intend to control or direct her daughter in the errand. Nor was the mission a part of the daughter's duties or pursuant to employment. In an uncompensated and casual use of the car, she acted only in a filial response to a mother's request.

Thus, the circumstances before us disclose an agency too narrow and attenuated to support any imputation of knowledge such as that in master and servant situations, and that in the case before the West Virginia high court where responsibility to report any accident was directly delegated to a driver regularly and continually employed. See Black & White Cab Co. v. New York Indem. Co., 108 W.Va. 93, 150 S.E. 521 (1929), which we similarly found inapplicable in Ohio Farmers Indem. Co. v. Charleston Laundry Co., supra, 183 F.2d 682.

The family purpose doctrine prevails in West Virginia, Eagon v. Wollard, 122 W.Va. 565, 11 S.E.2d 257, 134 A.L.R. 970 (1940), and presently it would support an assertion of liability against the owner. We agree with the District Judge that the agency created by this doctrine is simply "a legal fiction". For this reason we agree also with him that "the placing of the daughter's failure to notify the insurer as soon as practicable on the mother must be based on the *actual* relationship between the parties and not on this doctrine". (Accent added.)

Because of the purely voluntary and isolated instance of agency here, as already outlined, we do not think that the "sphere of the agent's [the daughter's] duty" included an obligation to report the collision to her mother. It was advisable but not demanded.

As a separate insured the daughter was not obligated by the terms of the policy to make any report of the accident to her mother. Under its provisions the duty of the daughter ran to the insurer only. If the named insured must be treated, as the policy insists, independently of the additional insured, there is no more reason to charge the car owner with the uncommunicated knowledge of the additional insured, than to charge the insurer with it.

True, the company was hurt, but the mother, equally without fault, will also be hurt by the daughter's reticence if the insurer's contention now prevails. The mother neither caused nor advised the non-disclosure, nor provided occasion for it. She was under no duty to the com-

pany to suspect and discover the daughter's concealment; the policy's coverage of her was not conditioned on her daughter's frankness. No basis is offered for visiting the penalty of forfeiture on the mother as well as on the daughter, especially when the two are policy-unrelated insureds. No West Virginia case contrary to this resolution is cited us.

A detached look at this case sharply reveals the entitlement of the mother and tort claimant to the protection of the policy. There is not the slightest doubt of her ignorance of the occurrence of the accident; there is not the slightest doubt that she has done everything in her power to comply with the policy. Into the purpose of such insurance there actually enters an interest of pedestrians and other drivers in indemnification. No want of vigilance on the part of the tort claimant is intimated. In these circumstances surely it would be monstrous to hold that both of these persons are to lose the beneficence of the insurance.

We note that the agent who issued the policy on the daughter's husband's car also wrote the insurance on the mother's car. Further, the same persons who for the agent looked into the liability of the husband's car were those who would have investigated the accident for the common agent if the truth about the mother's car had been reported. Hence, it is argued that the mother's insurer in effect received notice of her car's accident when the common agent was notified of the involvement of the son-in-law's car. Although it lessens the impact of the daughter's dereliction upon American Southern, we find it unnecessary to decide this contention.

The judgment of the District Court absolving the insurer of any obligation to defend or indemnify the daughter against liability is affirmed; but so much of the order as releases the plaintiff as the insurer of Josephine Anderson is reversed, with direction to the District Court to enter a declaratory judgment to that effect.

Affirmed in part and reversed in part.