## Michael J. Nasser, Sr., Administrator, etc.

### v.

## Charles E. Parker, m.d., et al.

Record No. 940758

March 3, 1995

Present: All the Justices

*William F. Krebs (Kellogg, Krebs & Moran*, on briefs), for appellant.

*Brian N. Casey (John Franklin, III; Taylor & Walker*, on brief), for appellee Charles E. Parker, M.D.

*Richard J. Cromwell (F. Brandford Stillman; Charles G. Meyers, III; McGuire, Woods, Battle & Boothe*, on brief), for appellees Hospital Corporation of America and Virginia Psychiatric Company, Inc.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

In this case, the trial court sustained demurrers to an amended motion for judgment. The amended motion sought damages for wrongful death allegedly resulting from the failure of a psychiatrist and a psychiatric hospital to warn a victim of the release from the hospital of a former boyfriend who had threatened to kill her. Finding that the trial court did not err in sustaining the demurrers, we will affirm.

Because the case was decided on demurrer, "we will consider the allegations pursuant to the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988).

As alleged in the amended motion for judgment, the deceased, Angela Nasser Lemon, had been involved in a relationship with George Edwards, but she rejected him and attempted to terminate their relationship. Edwards had a history of committing violent acts against women who rejected him. On December 5, 1990, Edwards held a gun to Lemon's head and threatened to kill her. She obtained a warrant for his arrest, and, fearing for her safety, left her Virginia Beach home in an effort to conceal her whereabouts from Edwards.

Shortly after the December 5 incident, Edwards consulted Charles E. Parker, M.D., a licensed psychiatrist who had been treating Edwards for mental problems over a period of seventeen years. Dr. Parker was aware of Edwards' history of violence toward women who rejected him and also was aware that Edwards recently had threatened Lemon. The doctor concluded that Edwards' mental condition was deteriorating and that Edwards needed prolonged intensive therapy in a mental hospital.

On or about December 10, 1990, Edwards was admitted "on a voluntary basis" to Peninsula Psychiatric Hospital in Hampton (the hospital). Dr. Parker visited Edwards in the hospital and observed that the patient had not been placed in a secure section.

Learning that Dr. Parker knew about Edwards' actions and his condition and that the doctor had arranged for Edwards to be hospitalized for a prolonged period, Lemon returned to her home. The day after his admission, Edwards left the hospital. Neither Dr. Parker nor the hospital notified Lemon of Edwards' departure.

Edwards visited Dr. Parker on December 13 or 14, 1990. The doctor prescribed medication for Edwards' mental illness. On December 17, Edwards shot and killed Lemon in her home and then killed himself.

Lemon was survived by an infant son. Lemon's father, Michael J. Nasser, Sr., in his capacity as administrator of Lemon's estate (the plaintiff), brought the present action seeking damages for Lemon's death against three defendants, namely, Dr. Parker and the two corporations that operated the hospital, the Hospital Corporation of America and Virginia Psychiatric Company, Inc.

All three defendants demurred to the plaintiff's original motion for judgment. The trial court sustained the demurrers on the ground that the motion for judgment failed to allege that the defendants had "take[n] charge" of Edwards within the meaning of § 319 of the Restatement (Second) of Torts (1965). Granted leave to amend, the plaintiff filed an amended motion for judgment which alleged that Dr. Parker "took charge" of Edwards "by accepting [him] as his patient for the purpose of providing prolonged treatment . . ., prescribing medication . . ., and arranging for [his] admittance to [the] Hospital." The motion for judgment also alleged that the hospital "took charge" of Edwards by "accepting and admitting [him] as a patient for the purpose of providing continued and prolonged psychiatric treatment."

All three defendants demurred again. The trial court sustained the demurrers, holding that even though the amended motion for judgment alleged that the defendants "took charge" of Edwards, the facts as alleged showed that "neither defendant took charge of Mr. Edwards as a matter of law." The trial court's final order dismissed the plaintiff's action with prejudice. We awarded the plaintiff this appeal.

The plaintiff's sole contention on appeal is that the defendants were under a duty to notify Lemon of Edwards' departure from the hospital and that the defendants failed in this duty. The plaintiff acknowledges the general rule that there is "no duty to control the conduct of third persons in order to prevent harm to another." *Marshall v. Winston*, 239 Va. 315, 318, 389 S.E.2d 902, 904 (1990). But, the plaintiff says, this Court has recognized that "a duty to protect one from the wrongful acts of a third party may exist because of a 'special relationship' between the defendant and the third party," as provided in § 315(a) of the Restatement. That section reads as follows:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct . . . .

The plaintiff maintains that the "special relation" requirement of § 315(a) is met in this case by both the doctor-patient relationship that existed between Dr. Parker and Edwards and the hospital-patient relationship existing between the hospital and Edwards. The plaintiff states that although this Court has never decided the question whether "a psychiatrist-patient relationship or a psychiatric hospital-patient relationship constitutes a Section 315(a) 'special relation,' virtually every other Court, which has considered the issue, has found that both relationships constitute such a relation."

The plaintiff says that *Tarasoff v. Regents of the University of California*, 551 P.2d 334 (Cal. 1976), is "the most similar case to the instant case" and is also "recognized as the foremost authority on the duty of a mental health professional to warn a known victim of the danger presented to him or her from the professional's

patient." In *Tarasoff*, a patient, Poddar, confided to a psychologist employed by a hospital at the University of California that he intended to kill the plaintiffs' daughter, Tatiana, who was then in Brazil. At the psychologist's request, campus police briefly detained Poddar, but released him when he appeared rational. The psychologist's superior then directed that no further action be taken to detain Poddar. No one warned the plaintiffs of Tatiana's peril, and, shortly after she returned from Brazil, Poddar went to her apartment and killed her.

Reversing the trial court's dismissal of the plaintiffs' complaint on demurrer, the Supreme Court of California found that the plaintiffs' pleadings established "as between Poddar and defendant therapists the special relation that arises between a patient and his doctor or psychotherapist" within the meaning of Restatement § 315(a). 551 P.2d at 343. The court went on to say that such a relationship "may support affirmative duties for the benefit of third persons," for example, "a hospital must exercise reasonable care to control the behavior of a patient which may endanger other persons," *id.*, and "[a] doctor must . . . warn a patient if the patient's condition or medication renders certain conduct, such as driving a car, dangerous to others," *id.* at 343-44.

The court stated further that "once a therapist . . . determine[s], or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim of that danger." *Id.* at 345. This duty, the court concluded, "requires the therapist to warn the endangered party or those who can reasonably be expected to notify him." *Id.* at 347.

 In other words, the *Tarasoff* court ruled that a doctor-patient relationship or a hospital-patient relationship alone is sufficient, as a matter of law, to establish a "special relation" under § 315(a), that such a relationship imposes certain duties concerning third persons whose conduct needs to be controlled, and that among these duties is the obligation of a therapist to warn an identifiable potential victim that the third person poses a threat of danger to the victim. While we think *Tarasoff* is factually distinguishable from the present case, we find the decision unpersuasive for another reason — it is at odds with this Court's interpretation of the Restatement's provisions relating to one's duty to control the conduct of a third person.

In determining whether one has a duty concerning the conduct of a third person, we have considered Restatement §§ 315(a) and 319 together, as we think they are intended to be considered. Indeed, Comment c to § 315 states that "[t]he relations between the actor and a third person which require the actor to control the third person's conduct are stated in §§ 316-319." Sections 316, 317, and 318 are inapplicable here. Section 319 is applicable, and it provides as follows:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

■ Our decision in *Fox*, 236 Va. 69, 372 S.E.2d 373, emphasizes the interactive effect §§ 315(a) and 319 have upon one another and highlights the important part the "takes charge" language of § 319 plays in determining whether a special relationship exists under § 315(a). *Fox* involved the criminal conduct of Morris Odell Mason, a parolee, who burned down the dwelling house of one plaintiff; abducted, beat, raped, and set fire to a second plaintiff; and shot, stabbed, and otherwise attacked a third plaintiff.

In separate motions for judgment sounding in negligence, the three plaintiffs sought damages from the parole officers responsible for Mason's supervision. The trial court sustained demurrers to the three motions for judgment. The plaintiffs appealed, and we affirmed.

■ We said that "the threshold question in [the] case [was] whether a duty of care existed on the part of these defendants to these plaintiffs." 236 Va. at 74, 372 S.E.2d at 375. Then, after quoting §§ 315(a) and 319, we said that the question became whether "a § 315(a) special relationship existed between defendants and Mason, *that is, whether the defendants took charge of or exercised control over him.*" 236 Va. at 75, 372 S.E.2d at 376 (emphasis added).

Noting that, according to statute, a parole officer must " '[s]upervise and assist all persons within his territory released on parole,' " *id.*, we stated that "to 'supervise and assist'. . . does not mean to assert custody in the sense that the parolee is in the personal care and control of the officer," *id.* Accordingly, we held

that "the defendants did not take charge of or exercise control over Mason within the meaning of accepted rules of tort law articulated in Restatement §§ 315(a) and 319" and, "[h]ence, no special relationship existed between defendants and Mason which imposed a duty upon them to control his conduct to prevent him from causing harm to persons or property." *Id.* at 75-76, 372 S.E.2d at 376.

*Dudley v. Offender Aid and Restoration, Inc.*, 241 Va. 270, 401 S.E.2d 878 (1991), also highlights the importance of the "takes charge" language of Restatement § 319 in determining whether a duty exists under §§ 315(a) and 319 to control the conduct of a third person. There, Offender Aid and Restoration of Richmond, Inc. (OAR), had a contract with the Department of Corrections to receive prisoners who met certain criteria. Although he did not meet the criteria, Timothy Wilson Spencer, a felon who was serving a penitentiary term and had been denied parole, was received by OAR and placed in a halfway house. OAR failed to enforce security measures required by its contract with the Department of Corrections. On the evening in question, during an unauthorized absence, Spencer broke open a window of an apartment and raped and murdered a young woman. Her administrator brought an action against OAR for its alleged negligence. OAR demurred. Relying upon *Fox, supra*, the trial court sustained the demurrer, the plaintiffs appealed, and we reversed.

We said *Dudley* differed from *Fox*. Pointing out that, when received by OAR, Spencer was in the custody of the Department of Corrections, we said that "[a]nyone assuming that custody from the Department necessarily became '[o]ne who takes charge' of Spencer within the meaning of Restatement § 319." *Id.* at 276, 401 S.E.2d at 881. Furthermore, we stated, the "custodial duties of OAR far surpassed those of a parole officer and met the criterion of Restatement § 319 for 'one who takes charge' of its inmates." *Id.* at 276, 401 S.E.2d at 882. Finally, we said that "a person 'likely to cause bodily harm to others if not controlled,' in the language of Restatement § 319, is a potential threat to all who come within his reach," and, "[i]n those circumstances, '[o]ne who takes charge' of such a dangerous person incurs a § 319 duty to an entire class of prospective victims . . . to control his dangerous charge." *Id.* at 279, 401 S.E.2d at 883.

■ It is a settled rule of decision in this Court, therefore, that, in order to establish a "special relation" under Restatement

§ 315(a) and overcome a demurrer in this type of case, a plaintiff must allege facts which, if proven, would show that the defendant had "take[n] charge" of a third person within the meaning of § 319. As noted previously, this view is completely at odds with the holding in *Tarasoff*. Indeed, the *Tarasoff* opinion does not mention Restatement § 319 or the section's requirement that one must take charge of a third person to trigger a duty to control the third person's conduct. *See* Peter F. Lake, *Revisiting Tarasoff*, 58 Alb. L. Rev. 97, 130 (1994) (characterizing *Tarasoff* as unpersuasive for failure to reference Restatement § 319).

■ Accordingly, we disagree with the holding of *Tarasoff* that a doctor-patient relationship or a hospital-patient relationship alone is sufficient, as a matter of law, to establish a "special relation" under Restatement § 315(a). Within the context of the Restatement, there is nothing special about the ordinary doctor-patient relationship or hospital-patient relationship. We think there must be added to those ordinary relationships the factor, required by § 319, of taking charge of the patient, meaning that the doctor or hospital must be vested with a higher degree of control over the patient than exists in an ordinary doctor-patient or hospital-patient relationship before a duty arises concerning the patient's conduct.

■ The plaintiff argues, however, that while a higher degree of control might be appropriate when an effort is made to impose upon a doctor or hospital a duty to confine the third person, such degree of control is inappropriate "when the sole question is whether there existed a duty to warn a known potential victim of the danger [posed] by the at large patient." In the latter situation, the plaintiff opines, "the necessary amount of control is minimal," and he requests that we apply the minimal degree standard in this case and reverse and vacate the trial court's order sustaining the defendants' demurrers.

Considering that "minimal" means "the least possible in . . . degree," *Webster's Third New International Dictionary* 1438 (1986), we deny the plaintiff's request. To grant the request would be to render all but meaningless the "takes charge" language of Restatement § 319. That language imports much more than a minimal degree of control, conveying, instead, the notion, as pertinent in the health care context and applicable to both a duty to confine and a duty to warn, that to take charge of a patient means, paraphrasing *Fox*, to "assert custody in the sense that the

[patient] is in the personal care and control of the [doctor or hospital]." *Fox*, 236 Va. at 75, 372 S.E.2d at 376.

Adverting to the allegations of the plaintiff's amended motion for judgment, including the avowal that Edwards entered the hospital "on a voluntary basis," we do not think Dr. Parker took charge of Edwards within the meaning of Restatement § 319 by "accepting [him] as his patient for the purpose of providing prolonged treatment . . ., prescribing medication . . ., and arranging for [his] admittance to [the] Hospital." Nor do we think the hospital took charge of Edwards by "accepting and admitting [him] as a patient for the purpose of providing continued and prolonged psychiatric treatment." The trial court did not err, therefore, in sustaining the defendants' demurrers and dismissing the plaintiff's action.

*Affirmed.*