# CIRCUIT COURT OF THE CITY OF RICHMOND

Corrine O. Stevens,
Ex'r of the Estate of
Alma E. B. J. Bonner, et al.

v.

Hospital Authority
of the City of Petersburg et al.

BY JUDGE DONALD W. LEMONS

May 27, 1997

The matters before the court are demurrers of the defendants in the cases filed in the Circuit Court of the City of Richmond against The Hospital Authority of the City of Petersburg, d/b/a Southside Regional Medical Center,

et al. by the following plaintiffs: Corrine O. Stevens, Executor of the Estate of Alma Ester Bland Johnson Bonner, Case No. LB-2888; Marian V. Freeman, LB-2955; Lemoyne A. Ward, LB-2956; Mary E. Johnson, Executor of the Estate of John H. Bonner, LB-2957; Elmyra Brown, LB-2958; Clinton Johnston, Administrator of the Estate of Bessie Carlene Johnston, LB-2959; Doris E. Bland, Administrator of the Estate of Elva D. Freeman, LB-2960; James D. Barnes, LB-2961; Lena D. Robinson, LB-2962; Janice Mae Fultz, Administrator of the Estate of Dora E. Matthews, LB-3133; Douglas A. Rawlings, Jr., Administrator of the Estate of Douglas A. Rawlings, Sr., LB-3062. Additionally, the defendant Southside Regional Medical Center (SRMC) has filed a Special Plea of Sovereign Immunity.

These actions have been consolidated for pretrial proceedings pursuant to the provisions of the Virginia Multiple Claimant Litigation Act, Code §§ 8.01-267.1 to 8.01-267.9, by order of this Court dated March 3, 1997.

### Sovereign Immunity

The Court finds the Hospital Authority of the City of Petersburg was created on September 16, 1948, pursuant to Title 15.1, Chapter 38, §§ 15.1-1533 *et seq.* of the Code of Virginia, originally enacted as Chapter 186 of the 1946 Acts of the General Assembly, authorizing creation of a hospital authority when a city council determines that a need exists for an authority to function in a city. A review of the applicable statutory provisions governing the Hospital Authority reveals that:

1. It is a corporate body which is a political subdivision of the Commonwealth of Virginia. *See* Va. Code Ann. §§ 15.1-1534(1), 15.1-1535.

2. It was created to serve a public purpose. *See* Va. Code Ann. § 15.1-1533.

3. It has the power to have a seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenue and personal and real property. *See* Va. Code Ann. §§ 15.1-1555, 15.1-1575, 15.1-1571, 15.1-1573, 15.1-1572, 15.1-1561, 15.1-1577.

4. It possesses the power of eminent domain. *See* Va. Code Ann. § 15.1-1578.

5. It possesses the power to borrow money and issue tax exempt bonds. *See* Va. Code Ann. §§ 15.1-1574, 15.1-1581, 15.1-1596.

6. It is run by a commission. *See* Va. Code Ann. § 15.1-1540.

Therefore the Hospital has all the essential attributes of a municipal corporation and enjoys immunity from suit for failure to exercise, or negligence in exercising, its governmental functions. *City of Richmond v. Richmond Metropolitan Auth.*, 210 Va. 645, 172 S.E.2d 831 (1970); *VEPCO*

*v. Hampton Redevelopment and Housing Auth.*, 217 Va. 30, 225 S.E.2d 364 (1976); *Transportation, Inc. v. City of Falls Church*, 219 Va. 1004, 254 S.E.2d 62 (1979). The operation of a hospital by a municipal corporation is a governmental function. *City of Richmond v. Long*, 58 Va. (17 Gratt.) 375 (1867); *see also Edwards v. City of Portsmouth*, 237 Va. 167, 171, 375 S.E.2d 747, 749-50 (1989).

The defendant employees and agents of SRMC who claim sovereign immunity are only entitled to immunity if they meet the four-prong test articulated by the Supreme Court of Virginia in *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980). The Court cannot make a determination under this test at this stage of the proceedings. The Hospital Authority's Special Plea of Sovereign Immunity is granted as to Counts 2, 3, 4, 5, 6, 7, 8, 9, and that part of Count 50 alleging punitive damages against the Hospital Authority.

## Public Nuisance

A municipal corporation is not immune from liability for creating or maintaining a public nuisance. *Chapman v. City of Virginia Beach*, 252 Va. 186, 475 S.E.2d 798 (1996); *Taylor v. City of Charlottesville*, 240 Va. 367, 397 S.E.2d 832 (1990). The Plaintiffs have stated a cause of action. The demurrer as to defendants SRMC and Quorum for creating a public nuisance is overruled.

## Premises Liability

A duty to keep particular premises reasonably safe for licensees or invitees flows from a possessory interest in the property. "[I]n Virginia the doctrine prevails that an *owner or occupant* of land who holds out an invitation to others to come upon his premises must exercise due care in keeping and maintaining his premises in a reasonably safe condition." *Turner v. Carneal*, 156 Va. 889, 894, 159 S.E. 72, 73 (1931) (emphasis added). *See also Restatement (Second) of Torts* § 343 ("A *possessor* of land is subject to liability for physical harm caused to his invitees by a condition on the land ....") (emphasis added). Additionally, an employee without a possessory interest may nonetheless be liable for damages to an invitee if their misfeasance creates the dangerous condition. *See Turner* at 894-95. Mere assumption of management responsibilities does not shift the responsibility for maintaining safe premises. *See Love v. Schmidt*, 239 Va. 357, 360-61, 389 S.E.2d 707, 709 (1990) (property owner could not shift responsibility for condition of premises to maintenance company); *Virginia State Fair Ass'n v.*

*Burton*, 182 Va. 365, 370, 28 S.E.2d 716, 718-19 (1944) (race track owner's obligation to maintain reasonably safe premises "continued despite the fact that [it] had employed an independent contractor to produce the races").

Clearly, the Hospital Authority has such possessory interest and the defendants concede this issue; however, no such possessory interest is alleged and no affirmative acts creating the danger are alleged by the plaintiffs with respect to Quorum, Dunham, Mizelle, Walthall, Bishop, Shank, Whittingham, Anderson, Ross, Ball, Tucker, Brumfield, Starks, Hardy, and Phelps.

Defendants ask that the demurrer be sustained as to particular counts in the Motion for Judgment; however, plaintiff's pleadings are not so neatly confined to one theory per count as to afford such relief. The Court will not engage in the process of striking particular paragraphs upon demurrer. Accordingly, to the extent that the Motion for Judgment alleges premises liability against the defendants named above, the demurrer is sustained. Plaintiffs are granted leave to file an Amended Motion for Judgment to allege a sufficient factual basis against any particular defendant.

### Restatement § 324A Liability

The Plaintiffs allege a violation of the common law duty articulated in Restatement (Second) of Torts § 324A. As all parties have admitted in their briefs, no Virginia case has directly adopted 324A liability.

The United States District Court for the Western District of Virginia did comment upon 324A liability in the case of *Radosevic v. Virginia Intermont College*, 651 F. Supp. 1037 (W.D. Va. 1987). That case, finding the comments to § 324A ambiguous, used the factors found in American Jurisprudence 2d, *Negligence*, § 50 (1971), to determine when nonperformance of a contractual duty can result in a tort cause of action. However, the Supreme Court of Virginia, in *Foreign Mission Board v. Wade*, 242 Va. 234 (1991), did not adopt this reasoning. *See Esposito v. Conover Septic Tank Service*, 25 Va. Cir. 303 (Loudoun Co. 1991):

> Even though the cases of *Radosevic* and *Picture Lake Campground v. Holiday Inns*, 497 F. Supp. 858 (E.D. Va. 1980), may imply that a third party beneficiary of a contract may be able to bring a tort claim for injuries resulting from a breach of contract … the Virginia Supreme Court … clearly stated in *Foreign Mission Board*, that breach of a contractual duty does not constitute an independent tort or the basis of a negligence claim.

The Court will not engage in the process of striking particular paragraphs upon demurrer. Accordingly, to the extent that the Motion for Judgment alleges liability under the Restatement (Second) of Torts § 324A, the demurrer is sustained. This would include defendants JCAHO, Quorum, Petersburg Alarm, Eagle Fire, and the Marriott Defendants and include Counts 20, 21, 22, 23, 24, and parts of Counts 10, 11, 12, 13, 14, and 15. Due to the Court's ruling on this demurrer, no leave to amend is granted to the plaintiffs to allege § 324A liability.

### Duty to Control

"Generally, a person has no duty to control the conduct of third persons in order to prevent physical harm to another." *Burdette v. Marks*, 244 Va. 309, 311, 421 S.E.2d 419, 420 (1992). Such a duty only arises when "a special relationship exists (1) between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff which gives a right of protection to the plaintiff." *Id.* at 312, 421 S.E.2d at 420.

The Virginia Supreme Court has ruled that such a special relationship between the defendant and a third person, and the attendant duty, arises only when a defendant has "taken charge of" a third person within the meaning of that phrase as set forth in the Restatement (Second) of Torts § 319. *See Nassar v. Parker*, 249 Va. 172, 179-80, 455 S.E.2d 502, 505 (1995).

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

*Restatement (Second) of Torts* § 319.

*Nassar* rejected the premise that either a physician-patient relationship or a hospital-patient relationship, standing alone, is sufficient to create a duty to control third parties:

> Within the context of the Restatement, there is nothing special about the ordinary doctor-patient relationship or hospital-patient relationship. We think there must be added to those ordinary relationships the factor, required by § 319, *of taking charge* of the patient, meaning that a doctor or hospital must be vested with a higher degree of control over the patient than exists in an ordinary doctor-

patient relationship before a duty arises concerning the patient's conduct.

*Nassar* at 180, 455 S.E.2d at 506 (emphasis added).

When Matthews was placed in restraints, the Hospital "took charge" of her, outside the "ordinary doctor-patient relationship." The Motion for Judgment alleges that the following individuals participated in the restraining of Ms. Matthews and accordingly the demurrers against each will be overruled: Shank (¶ 121), Mizelle (¶¶ 126, 127), Krishnamurthy (¶ 145), Ross (¶ 160), Pinkerton (¶¶ 181, 182), Walker (¶ 182), Bankhead (¶ 182), Kornegay (¶ 182), Adekoya (¶ 182), and Leininger (¶ 181). In paragraphs 161 and 163 the plaintiffs allege that "SRMC employees" participated in the restraint; therefore, the demurrer is also overruled against SRMC employees Whittingham, Anderson, Ball, Tucker, and Brumfield. However, the demurrer is granted as to defendants Shaver and Reddy because it is not alleged that they participated in the restraint. Leave to amend is granted to satisfactorily allege § 319 liability.

Section 319 imposes liability on one who takes charge of an individual who then harms a third person. This is inapposite in the Fultz action where the person who was taken charge of was the person harmed. Therefore, for any cause of action based on § 319 in the Fultz case, the demurrer is sustained and leave to amend is denied.

Plaintiffs also rely upon section 320 of the *Restatement (Second) of Torts*. That section states that:

> One ... who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor
>
> (a) knows or has reason to know that he has the ability to control the conduct of third persons, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

There are no facts alleged that would support a finding that the plaintiffs were in "custody" depriving them of their normal power of self-protection. Therefore, the demurrer as to claims stating § 320 liability is sustained and plaintiffs are granted leave to amend to satisfactorily allege § 320 liability.

## Practice of Medicine

The demurrer that claims that allegations in Counts 13, 15, 17, and 19 would constitute the practice of medicine, something permitted only to properly licensed individuals under Virginia Code § 54.1-2902, is overruled. Whether the allegations constitute the practice of medicine will have to be established by evidence.

## Joint Enterprise/Joint Venture

Counts 30.1 and 30.2 allege liability against Doctors Reddy, Shaver, and Krishnamurthy based on an alleged joint enterprise and joint venture. The Medical Malpractice Act in Virginia, Virginia Code Ann. §§ 8.01-581.1 through 8.01-581.20, defines the legal duty that a physician owes her patient. In *Peck v. Tegtmeyer*, 834 F. Supp. 903, 911 (W.D. Va. 1992), *aff'd*, 4 F.3d 985 (4th Cir. 1993), *cert. denied*, 114 S. Ct. 884 (1994), the court held that a physician cannot be held liable for the negligent acts of another physician because the Medical Malpractice Act in Virginia is the comprehensive medical malpractice scheme and the breadth of the Act suggests that no vicarious liability is intended by the Act. *Id.* at 907.

The doctrine of *respondeat superior* may impose vicarious liability. *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 235, 476 S.E.2d 173 (1996); however, no allegations of *respondeat superior* have been made concerning the relationship of the doctors to one another. Plaintiffs have alleged "joint enterprise" liability. The Supreme Court of Virginia has defined "joint enterprise" as follows:

> To constitute a joint enterprise within the meaning of the law, the parties must have a community of interest in the object and purpose of the undertaking, and an equal right to direct and govern the movements and conduct of each in respect thereto.

*Miller v. Query*, 201 Va. 193, 197, 110 S.E.2d 198, 201 (1959).

The "equal right to direct and control" necessary to constitute a joint enterprise must "rest not upon a desire to please but upon recognition of a right." *Carroll v. Hutchinson*, 172 Va. 43, 53-54 (1939). This right can be "the relation of principal and agent or master and servant" *Id.* at 54. The pleadings do not allege that any of the doctors had a right to "direct and control" the others; therefore no joint enterprise or joint venture can be claimed. The

Demurrer to Counts 30.1 and 30.2 is sustained, and plaintiffs are granted leave to amend to satisfactorily allege a joint enterprise or joint venture.

## Negligence Per Se: *Building and Fire Codes*

Pursuant to Virginia Code § 36-99, the Virginia Department of Housing and Community Development has adopted regulations to be complied with in the construction of buildings, structures, and service equipment therein. These regulations control all matters concerning the construction, alteration, addition, repair, removal, demolition, use, location, and occupancy and maintenance of all buildings. Virginia Uniform Statewide Building Code, § 100.1. Those who perform the work relating to the construction, alteration, addition, repair, removal, or maintenance on a building must conform to the Building Code.

> [T]he violation of the Building Code, like the violation of any statute enacted to protect health, safety, and welfare, is negligence *per se.*
> *See, e.g., VEPCO v. Savoy Const. Co.*, 224 Va. 36, 45, 294 S.E.2d 811, 817 (1982).

*MacCoy v. Colony House Builders, Inc.*, 239 Va. 64 at 69, 387 S.E.2d 760 at 763 (1990).

Building Code § 104.1 assigns responsibility for building maintenance on the owner, or his designated agent, not on employees. Consequently, violations of the Building Code do not furnish the basis for a negligence *per se* claim against defendants Phelps and Hardy, employees of the Hospital. Similarly, the Virginia Statewide Fire Prevention Code § F-106.2 places responsibility on the owner for safe and proper maintenance of the building. Accordingly, defendants' demurrers to Count 46 and any other count that alleges liability for Building Code violations for anyone who is not the owner or designated agent, specifically Hardy and Phelps, are sustained. Demurrers to any count that alleges liability for Fire Prevention Code Violations against anyone other than the owner are sustained, specifically Quorum, Dunham, Hardy, and Phelps.

Plaintiffs are entitled to prove the allegations of the Motion for Judgment. Therefore the demurrer is overruled as to claims that specific code sections were not adopted. Similarly, defendants' demurrers based on the allegation that independent contractors (who are not named defendants) violated the building code is subject to proof, and the demurrer is overruled.

*Negligence* Per Se: *Medicaid/Medicare Violations*

In *Evelyn v. Kings County Hosp. Center*, 819 F. Supp. 183 (E.D. N.Y. 1983), the court held that standards under 42 C.F.R. §§ 482.1 *et seq.* do not create a right enforceable by Medicaid patients against participating hospitals because these regulations "serve the far more limited purpose of providing 'the basis of survey activities' to assist federal officials in exercising *their* oversight responsibilities for hospitals operating under an approved state Medicaid plan." *Id.* at 198 (quoting 42 C.F.R. § 482.1(3)(b)).

The Court makes a similar finding as to the purpose of § 209.2 of the Rules and Regulations for the Licensure of Hospitals in Virginia ("The number and type of nursing personnel on all shifts shall be based upon the needs of the patients and the capabilities of the nursing staff assigned to the patient care unit."). The purpose of the Rules and Regulations for the Licensure of Hospitals in Virginia is to provide for a uniform standard among hospitals in the Commonwealth and is stated in § 10.2: "These regulations have been promulgated by the Board for the purpose of defining the minimum standards of organization, operation, staffing and physical plant design for hospital licensure in the Commonwealth."

Neither of these regulations was adopted with the explicit purpose of protecting the health, safety, and welfare of the public. The fact that these regulations have some incidental benefits flowing to the public at large does not create a private cause of action. *See Williamson v. The Old Brogue, Inc.*, 232 Va. 350, 350 S.E.2d 621 (1986).

Therefore, because the purpose of the Medicaid and state regulations is not to protect health, safety, and welfare, there is no private cause of action based on violations of these regulations. However, the Court understands the Motion for Judgment *not* to allege a separate cause of action based upon these regulations; rather, it alleges breach of these regulations as evidence of plaintiffs' claims based upon ordinary and gross negligence. Accordingly, the demurrer is unnecessary and is overruled.

*Negligence* Per Se: *Private Rules*

There is no cause of action based upon private rules; however, these rules may be evidence as to the appropriate standard of care to be provided by the defendants. *See Virginia Railway & Power Co. v. Godsey*, 117 Va. 167, 83 S.E. 1072 (1915); *Pullen v. Nickens*, 226 Va. 342, 310 S.E.2d 452 (1983). The Court understands the Motion for Judgment such that the private rules cited by the plaintiffs do not constitute a separate cause of action, but rather offer a

basis for claims of ordinary and gross negligence. Accordingly, the demurrer is unnecessary and is overruled.

## No Duty

Plaintiffs are entitled to prove the allegations of the Motion for Judgment. Therefore the demurrer is overruled as to the claims that Nurses Walthall, Bishop, and Shank had no duty under the allegations in Counts 34, 36, 37, and 39.

## Insufficient Factual Allegations

The Demurrer claiming insufficient factual allegations is overruled.

## Gross Negligence

The Demurrer based on insufficient allegations of gross negligence is overruled.

## Punitive Damages

The Demurrer based on insufficient allegations to support a claim of punitive damages is overruled.

## Conclusion

The plaintiffs shall have twenty-one days from the date of this letter opinion in which to file an amended motion for judgment where allowed in this opinion, if they be so advised. If they do, the defendants shall have twenty-one days from service in which to file responsive pleadings.

The Court's stay of discovery is lifted.

September 10, 1997

The *Stevens* Plaintiffs were granted leave to amend various counts of their motion for judgment in this court's May 27, 1997, letter opinion. Plaintiffs filed an Amended Motion for Judgment (AMFJ) adding three counts. Count 51 asserts a premises liability claim against numerous defendants. Count 52 asserts a Restatement § 319 claim against Defendants Dr. Shaver, Dr. Reddy, and P. Jagan Reddy & Associates. Count 53 alleges Defendant Dr.

Krishnamurthy, as an agent of Dr. Reddy and Dr. Shaver, is liable for their negligent acts regarding the care of Ms. Matthews. Defendants have filed demurrers and other motions regarding the AMFJ.

The *Fultz* Plaintiffs were also granted leave to amend various counts of their motion for judgment. An AMFJ with fifty counts was filed. Defendants have filed demurrers and other motions regarding the AMFJ.

## I. *Stevens*

### Count 51: Premises Liability

Defendants Reddy, Shaver, Krishnamurthy, and the SRMC nurses demur to Count 51 of the AMFJ on the ground that it fails to state a claim of premises liability against them. The court ruled in its May 27, 1997, letter opinion that Plaintiffs' original motion for judgment failed to sufficiently allege a claim of premises liability against certain defendants and gave Plaintiffs leave to amend to allege a sufficient factual basis against any defendant, not just those defendants whose demurrers were sustained. The court found that as to all defendants except the Hospital Authority, Plaintiffs had failed to allege a possessory interest or any affirmative acts creating a dangerous condition.

Plaintiffs' AMFJ suffers from the same problem: it fails to allege any factual basis for concluding the named defendants had a possessory interest in the property or that any defendants created any dangerous conditions on the premises. Defendant SRMC concedes that Plaintiffs have sufficiently alleged a premises liability claim against SRMC employee Hardy, but as to all other defendants, the demurrer to Count 51 is sustained without leave to amend.

### Count 52: Restatement § 319 Liability

Defendants Dr. Reddy and P. Jagan Reddy & Associates and Dr. Shaver demur to this count on the ground that Plaintiffs allege no facts establishing either of them "took charge" of Ms. Matthews for the purposes of Restatement §§ 315(a) and 319. Plaintiffs allege Dr. Reddy "took charge" of Ms. Matthews by prescribing 5 mg. of the tranquilizer Haldol, constituting a "chemical restraint" of Ms. Matthews.

The Virginia Supreme Court in *Nasser v. Parker*, 249 Va. 172, 455 S.E.2d 502 (1995), held that a doctor-patient or hospital-patient relationship alone is insufficient to establish a "special relation" under Restatement § 315(a). See *Nasser* at 180, 455 S.E.2d at 506. There must be added to that relationship the factor of "taking charge of the patient, meaning that the doctor or hospital must

be vested with a higher degree of control over the patient than exists in an ordinary doctor-patient or hospital-patient relationship before a duty arises concerning the patient's conduct." *Id.*

To take charge of a patient means "to assert custody in the sense that the [patient] is in the personal care and control of the [doctor or hospital]." *Id.* (paraphrasing *Fox v. Custis*, 236 Va. 69, 75, 372 S.E.2d 373, 376 (1988)).

In applying these rules, the *Nasser* court held that Dr. Parker did not take charge of his patient by "accepting [him] as his patient for the purpose of providing prolonged treatment ... prescribing medication ... and arranging for [his] admittance to [the] Hospital" or by "accepting and admitting [him] as a patient for the purpose of providing continued and prolonged psychiatric treatment." *Nasser* at 181, 455 S.E.2d at 506.

The issue in this case is whether prescribing 5 mg. of Haldol, "a major tranquilizer," vested with the doctors a higher degree of control over Matthews than existed in her normal doctor-patient relationship. Administering medication is necessarily an integral part of the doctor-patient relationship and even though this drug in particular had the effect of restraining Matthews, the *Nasser* court already acknowledged that prescribing medication did not amount to an additional factor of control.

The demurrer of Dr. Reddy and P. Jagan Reddy & Associates to Count 52 is sustained without leave to amend.

Plaintiffs allege in Count 52 of the AMFJ that Dr. Shaver "either ordered or ratified each of the physical restraints" applied to Ms. Matthews. This court has already ruled that the defendants who participated in placing Ms. Matthews in physical restraints took charge of her within the meaning of Restatement § 319. By alleging Dr. Shaver ordered the restraints, Plaintiffs have alleged Dr. Shaver took affirmative action to physically restrain Ms. Matthews, thus participating in her restraint.

Defendant Dr. Shaver's demurrer to Count 52 is overruled.

### Count 53: Liability of Dr. Krishnamurthy

Count 53 alleges Dr. Krishnamurthy is liable for the negligent acts of Dr. Shaver and Dr. Reddy as his agents. Plaintiffs allege Dr. Krishnamurthy had the right and duty to control Dr. Shaver and Dr. Reddy in their care of Ms. Matthews.

Plaintiffs' counsel asserted in oral argument that Count 53 was an agency allegation but has since informed the court that he intended Count 53 to be based on "traditional vicarious liability principles, imposing liability upon the

master for the torts of the servant committed within the scope of the master-servant relationship."

Plaintiffs have not alleged any facts supporting a conclusion that Dr. Shaver or Dr. Reddy were servants or employees of Dr. Krishnamurthy.

Plaintiffs have also failed to allege any facts to support the conclusion that Dr. Krishnamurthy had a right or duty to control the acts of the other defendant Doctors, nor have Plaintiffs alleged Dr. Krishnamurthy actually exercised that alleged authority.

Defendant Dr. Krishnamurthy's demurrer to Count 53 is sustained without leave to amend.

## II. *Fultz*

On July 14, 1997, subsequent to oral argument regarding these motions, Plaintiffs in the *Fultz* case filed a motion to nonsuit as to Defendants Dr. Reddy and P. Jagan Reddy & Associates. These defendants' request for a medical malpractice review panel and their plea of the statute of limitations in that case are thereby rendered moot and are denied.

### Counts 2 to 5: Premises Liability of Quorum

Plaintiff was granted leave to file an amended motion for judgment to allege a sufficient factual basis against any particular defendant for their premises liability counts. The counts in the AMFJ relating to Quorum are identical to the counts of the original motion for judgment relating to Quorum. The only substantive change is ¶ 249 which states: "Quorum had a possessory interest in SRMC in that it operated and controlled the premises through its agent, Mr. Dunham." Defendant Quorum asks this court to dismiss certain allegations contained in Counts 4 and 6. The court will not engage in the process of striking particular paragraphs, but to the extent that Plaintiff's AMFJ attempts to state a premises liability claim against Quorum, that demurrer is sustained without leave to amend.

### Counts 3 and 7: Negligence per se of Quorum Employees

The court has previously ruled that the owner of premises, not the employees, could be deemed negligent *per se* for violations of building and fire codes. Count 7 of Plaintiff's AMFJ alleges Defendant Dunham is liable for negligence *per se* by failing to cause SRMC to comply with the building

code. Defendant Dunham's demurrer to Count 7 is sustained without leave to amend.

Count 3 of Plaintiff's AMFJ alleges Defendant Quorum is liable under the doctrine of *respondeat superior* for the negligence *per se* of its employees. Since this court has already ruled those employees could not be deemed negligent *per se* for violations of the building and fire codes, Defendant Quorum cannot be held liable for this alleged negligence. Defendant Quorum's demurrer to Count 3 is sustained without leave to amend.

*Counts 8 and 10: Negligence by Dunham for Negligent Breach of his Duties*

Defendant Quorum asks this court to dismiss certain allegations contained in Counts 8 and 10. The court will not engage in striking particular paragraphs, but to the extent that Counts 8 and 10 attempt to state a claim of premises liability against Defendant Dunham, but alleges no possessory interest or affirmative acts creating a dangerous condition, the demurrer is sustained without leave to amend.

Defendant's demurrer to allegations in ¶¶ 279(d) and 286(d) regarding the risk Matthews posed to herself is overruled.

*Count 19: Dr. Shaver's Medical Malpractice Liability*

Defendant Dr. Shaver contends Count 19 of Plaintiff Fultz's AMFJ is barred by the two year statute of limitations. Plaintiff Fultz's original motion for judgment alleged Dr. Shaver breached duties she had under Restatement §§ 319, 320, and 324 in her care of Ms. Matthews. This court sustained Dr. Shaver's demurrer and granted leave to amend. Count 19 of Plaintiff's AMFJ filed June 6, 1997, alleges Dr. Shaver's breach of her duties amounted to medical malpractice. Dr. Shaver alleges this count in the AMFJ states a new cause of action and therefore does not relate back to the original date of filing, December 30, 1996. Dr. Shaver argues since this count does not relate back to the original date of filing, it is barred by the two-year statute of limitations prescribed by Virginia Code § 8.01-244(B).

The court must first decide whether Virginia Code § 8.01-6.1, effective July 1, 1996, applies to this inquiry. Since that section, governing the amendment of pleadings and relation back, became effective after the *Fultz* cause of action accrued on the night of December 31, 1994, application of the statute now would be retroactive.

Code § 8.01-6.1 provides:

an amendment of a pleading changing or adding a claim or defense against a party relates back to the date of the original pleadings for purposes of the statute of limitations if the court finds (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading, (ii) the amending party was reasonably diligent in asserting the amended claim or defense, and (iii) parties opposing the amendment will not be substantially prejudiced in litigating on the merits as a result of the timing of the amendment.

Va. Code Ann. § 8.01-6.1 (Supp. 1997).

The court finds the Virginia Supreme Court's recent opinion on retroactive application of statutes, *Harris v. DiMattina*, 250 Va. 306, 462 S.E.2d 338 (1995), the most instructive on the issue and will employ the analysis used by the *Harris* court to resolve whether § 8.01-6.1 can be applied retroactively to the *Fultz* plaintiff's pleadings.

The first question to be answered is whether the statutory provision in question is procedural or substantive in nature. See *Harris* at 311, 462 S.E.2d at 340. Provisions that are substantive in nature involve the creation of duties, rights, and obligations, as opposed to procedural statutes which prescribe the methods of obtaining redress or enforcement of rights. See *id.* at 312, 462 S.E.2d at 340; *Shiflet v. Eller*, 228 Va. 115, 120, 319 S.E.2d 750, 753-54 (1984). Code § 8.01-6.1 does not create any duties, rights, or obligations, but prescribes the method by which a party may amend his pleadings and is therefore procedural in nature rather than substantive. Accord *Mauk v. Tidewater Funeral Home, Inc.*, 22 Va. Cir. 300 (Portsmouth City 1990) (finding Code § 8.10-6 governing relation back to correct misnomers is procedural in nature). Since § 8.01-6.1 is a procedural statute, and since it was not in existence at the time the plaintiff's cause of action accrued, neither party acquired any vested right in the statute.

Although new statutes are usually presumed to be prospective and not retrospective in their operation, see *Paul v. Paul*, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974), as a general rule, proceedings shall conform to the law in effect on the date the proceedings are conducted. See Va. Code Ann. § 1-16; *Harris* at 313, 462 S.E.2d at 341. The exception to that general rule is set forth in Virginia Code § 8.01-1, which provides, in relevant part:

[A]ll provisions of this title shall apply to causes of action which arose prior to the effective date of any such provisions; provided, however, that the applicable law in effect on the day before the effective date of

the particular provisions shall apply if in the opinion of the court any particular provision (i) may materially change the substantive rights of a party (as distinguished from the procedural aspects of the remedy) or (ii) may cause the miscarriage of justice.

Va. Code Ann. § 8.01-1 (1992). Under this section, a court may retroactively apply a statute if application of that statute would neither materially change a party's substantive rights nor cause a miscarriage of justice.

Defendant Dr. Shaver argues that on December 31, 1994, the night of the fire and the night this cause of action accrued, the applicable statute of limitations of Virginia Code § 8.01-244(B), provided her with a vested right to be free from prosecution of a wrongful death claim filed by the plaintiff more than two years after Ms. Matthews' death. Dr. Shaver is correct in that she acquired this vested right, but she did not acquire that right until the statute of limitations expired, on December 31, 1996. See *Harris* at 315, 462 S.E.2d at 342 ("the defendant had acquired a vested property right in the two-year statute of limitations. This right had accrued when the two-year limitations period expired ...."); *Starnes v. Cayouette*, 244 Va. 202, 208, 419 S.E.2d 669, 672 (1992) ("the right to set up the bar of a statute of limitations as a defence [sic] to a cause of action *after the statute has run* is a vested right, and cannot be taken away by legislation.") (emphasis added and citations omitted). Plaintiff's wrongful death claim "was still alive when the new statute was passed" and "[n]o vested or substantive rights had accrued to [the defendant] prior to its passage." *Cohen v. Fairfax Hospital Assn.*, 12 Va. App. 702, 708, 407 S.E.2d 329, 332-33 (1991).

The court notes the opinion of Judge Markow in *White v. Morano*, 30 Va. Cir. 384 (Richmond City 1993), holding Virginia Code § 8.01-6, governing the amendment of pleadings to correct a misnomer and very similar to § 8.01-6.1, could not be applied retroactively. Judge Markow based his decision on *Starnes* and that the "statute of limitations defense is a substantive right, not subject to divestment by retroactive legislation." *White* at 386. That decision, however, is distinguishable from this case based on the distinction made above. The defendants in *White* acquired their vested right in a statute of limitations defense before the statute in question became effective. *Id.* Dr. Shaver did not acquire her vested property right to be free from a wrongful death action prior to the effective date of § 8.01-6.1 and thus, application of that section does not divest her of any right already accrued before July 1, 1996. See *Harris* at 318, 462 S.E.2d at 343-44.

The court finds applying Code § 8.01-6.1 to Fultz's amended pleadings would not materially alter any of Dr. Shaver's substantive rights accrued

before the section became effective on July 1, 1996, nor would application of the section cause a miscarriage of justice.

For an amendment of a pleading to relate back under § 8.01-6.1, the court must make three findings. The court does find that the new claim of the Fultz plaintiff arises out of the same conduct, transaction, or occurrence as set forth in the original pleadings, namely the care of Ms. Matthews and the fire at SRMC on the night of December 31, 1994. This court also finds that Dr. Shaver would not be substantially prejudiced in litigating on the merits of the amended pleadings as a result of the timing of the amendment. Trial is not immanent and the parties just began discovery. The court does not find that Fultz was not reasonably diligent in asserting this medical malpractice claim.

Additionally, upon review of the AMFJ, the facts alleged were sufficient to support a claim of medical negligence even if the words "medical negligence" or "medical malpractice" were not used. The AMFJ adds no new facts but does use the words "medical negligence" in the allegations.

For the reasons stated above, the plea of statute of limitations is overruled.

*Counts 22 to 30: Negligent Breach of Duties by Nurses Mizelle, Walthall, Shank, and Bishop*

Plaintiff's original motion for judgment failed to sufficiently allege premises liability claims against these defendants. Plaintiff's AMFJ differs from the original motion for judgment only in that it dropped the paragraph in each of these Counts that alleged these defendants had a duty to keep the premises in a reasonably safe condition. These defendants demur to certain allegations in these counts that involve premises liability theories. Since Plaintiff has still failed to allege a sufficient factual basis for a premises liability claim against these defendants, to the extent these Counts allege premises liability against these defendants, the demurrer is sustained without leave to amend.

*Counts 31 to 33: Negligent Breach of Duties by Nurses Whittingham, Anderson, Ross, Ball, Nursing Assistant Tucker, and PCT Brumfield*

Plaintiff's original motion for judgment failed to sufficiently allege premises liability claims against these defendants. Plaintiff's AMFJ differs from the original motion for judgment only in that it dropped various paragraphs in each of these Counts. These defendants demur to certain allegations in these counts that involve premises liability theories. Since Plaintiff has still failed to allege a sufficient factual basis for a premises

liability claim against these defendants, to the extent these Counts allege premises liability against these defendants, the demurrer is sustained without leave to amend.

*Counts 37 to 39: Negligent Breach of Duties by Hardy and Phelps*

Plaintiff's original motion for judgment failed to sufficiently allege premises liability claims against these defendants. Plaintiff's AMFJ differs from the original motion for judgment only in that it dropped various paragraphs in each of these Counts. These defendants demur to certain allegations in these counts that involve premises liability theories. Since Plaintiff has still failed to allege a sufficient factual basis for a premises liability claim against these defendants, to the extent these Counts allege premises liability against these defendants, the demurrer is sustained without leave to amend.

The court has ruled on numerous motions and demurrers but will not enter an order at this time. The appeal provisions of the Multiple Claimant Litigation Act are such that parties may wish to have other issues resolved by the court so that appeals are taken simultaneously rather than piecemeal. The court will await formal notification from the parties concerning this matter.